*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0439p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

INTERA CORPORATION, *et al.*,

> *Plaintiffs-Appellants,*

*v.*

No. 04-6081

GEORGE HENDERSON III, *et al.*,

> *Defendants-Appellees.*

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 03-00755—Robert L. Echols, Chief District Judge.

Argued: July 28, 2005

Decided and Filed: November 10, 2005

Before: SILER and DAUGHTREY, Circuit Judges; MARBLEY, District Judge.[*]

---

## COUNSEL

**ARGUED:** William Kennerly Burger, BURGER, SISKIN, SCOTT & McFARLIN, Murfreesboro, Tennessee, for Appellants. Barry Goheen, KING & SPALDING, Atlanta, Georgia, for Appellees. **ON BRIEF:** William Kennerly Burger, BURGER, SISKIN, SCOTT & McFARLIN, Murfreesboro, Tennessee, for Appellants. Barry Goheen, KING & SPALDING, Atlanta, Georgia, Thor Y. Urness, BOULT, CUMMINGS, CONNERS & BERRY, Nashville, Tennessee, for Appellees.

---

## OPINION

---

ALGENON L. MARBLEY, District Judge. Plaintiffs-Appellants ("Plaintiffs") Intera Corporation and Intera Technologies (sometimes collectively referred to as "Intera") appeal the district court's dismissal of their lawsuit against Defendants-Appellees ("Defendants") George Henderson, III, John Englar, and Nano-Tex, Inc (hereinafter "Nano-Tex") for lack of personal jurisdiction with prejudice. Intera sued Henderson, Englar, and Nano-Tex for misappropriation of trade secrets, technology, and "know how," in violation of Tennessee's version of the Uniform Trade Secrets Act (codified as amended at TENN. CODE § 47-25-1701), in addition to raising claims of common law trade secret appropriation, breach of constructive trust, civil conspiracy, fraud, unjust enrichment, and tortious interference with business relations. The district court held that it

---

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

lacked personal jurisdiction over Defendants, and thus, it dismissed the case. Jurisdiction is proper under 28 U.S.C. § 1291.[1] For the reasons set forth below, we **AFFIRM** the district court's decision that it lacked personal jurisdiction over Defendants, but **REVERSE** the district court's decision to dismiss Plaintiffs' action for lack of personal jurisdiction "with prejudice."

## *BACKGROUND*

Plaintiffs are Tennessee corporations engaged in the industry of textile development and promotion. Their business includes the development of trade secrets, technology, and specialized "know how." Henderson and Englar are not residents of Tennessee, and Nano-Tex is not a Tennessee corporation.

In 1992, Intera and Burlington Knitted Fabrics, Inc. ("Burlington Fabrics"), a division of Burlington Industries, Inc. ("Burlington Industries") entered into a written license agreement. The following year, Intera and Burlington Woven, another division of Burlington Industries, entered into a license agreement, which provided for the confidential use and application of Intera's specialized fabric treatment processes. The license agreement between Intera and Burlington Woven contained a choice-of-law provision, which provided that all disputes arising under the agreement would be decided by Tennessee law, in a Tennessee forum. Additionally, Burlington Industries' employees with access to Intera's technology were required to provide "confidentiality assurances" to protect Intera's know how from disclosure to competitors and other unauthorized persons. At the time Intera entered into the license agreements, Henderson served as Burlington Industries' chief operating officer, and Englar served as Burlington Industries' vice president, and thus, they were required to keep their knowledge of Intera's technology confidential.

In the late 1990s, Intera invited Burlington Industries to enter into a joint venture for the purpose of further developing Intera's technology. This was consistent with the terms of the existing license agreement that Intera had entered into with Burlington Woven. Thereafter, Intera disclosed a confidential business plan to Burlington Industries. According to Intera, at some point in the late 1990s, Henderson and Englar colluded to adopt and to expand the technology that Intera had confidentially licensed to Burlington Industries and its various divisions.

In August 2000, John Maier, Burlington Industries' intellectual property counsel, informed Intera that Burlington Industries was considering the use of similar technology from Nano-Tex, one of Intera's competitors. Paragraph 2.2 of the license agreement between Intera and Burlington Woven requires Burlington Industries to provide Intera with ninety days' written notice sent via certified mail if the company "ever developed any interest in adopting or utilizing similar technology from any other source. . . ." Henderson and Englar created Nano-Tex, and at some point post-creation, Burlington Industries became the majority shareholder and parent company of Nano-Tex. Henderson and Englar remained corporate officers of Burlington Industries while at the same time serving as principal officers and stockholders of Nano-Tex, thus providing them with the opportunity to divert Intera's customers to Nano-Tex. Intera tested Nano-Tex's fabric and discovered that the fabric exhibited many properties of Intera's technological innovations and know-how. Accordingly, Intera alleges that Nano-Tex developed a directly competitive textile application, in which it used Intera's technology to benefit Henderson, Englar, and others.

On August 21, 2002, Plaintiffs filed suit against Defendants alleging misappropriation of trade secrets, technology, and know how "related to the testing of moisture-absorbing and/or moisture-transporting fabrics" under Tennessee's version of the Uniform Trade Secrets Act. In their suit, Plaintiffs also alleged several other state law claims against the Defendants including the

---

[1]Defendants challenge this Court's jurisdiction to decide the merits of this appeal on the basis that Plaintiffs did not timely appeal the district court's dismissal of the case for lack of personal jurisdiction. *See infra* Part I.A.

following:  common law claims of trade secret appropriation, breach of constructive trust, civil conspiracy, fraud, unjust enrichment, and tortious interference with business relations.  Defendants moved to dismiss Plaintiffs' claims for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  Defendants claimed that dismissal for lack of personal jurisdiction was proper as it pertains to Henderson and Englar because they are residents of North Carolina, both work in that state, and they have no contacts with Tennessee. Furthermore, Defendants argued that dismissal of Plaintiffs' claims against Nano-Tex was warranted because Nano-Tex is a California limited liability company, which has its principal place of business in Greensboro, North Carolina, it transacts no business in Tennessee, and it has no other connections with Tennessee.  Alternatively, Defendants moved for dismissal of Plaintiffs' common law claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the basis that Tennessee's version of the Uniform Trade Secret Act preempts Plaintiffs' common law claims.

The district court noted that the parties disputed the court's personal jurisdiction over Defendants, but exercised subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  *Intera Corp. v. Henderson*, No. 3:03-0755, slip op. at 6 (M.D. Tenn. May 26, 2004).  With respect to Henderson and Englar, the district court held that: (1) Plaintiffs failed to make a prima facie showing that Henderson and Englar "personally availed themselves of the privilege of acting in Tennessee or causing a consequence in Tennessee" ; (2) Plaintiffs did not adduce facts tending to show that Henderson and Englar engaged in activities in Tennessee; and (3) the consequences of Henderson's and Englar's "business operations" did not bear a substantial enough connection with Tennessee to make the exercise of jurisdiction over those defendants reasonable.  *Id*. at 16-17.  With regard to Nano-Tex, the district court held it lacked personal jurisdiction over the company because: (1) Plaintiffs did not allege facts intimating that Nano-Tex has any "apparent" contacts with Tennessee; (2) Plaintiffs failed to establish that Nano-Tex is the alter-ego of Henderson and Englar such that the company has no personality separate from Henderson and Englar; (3) Plaintiffs failed to establish that Nano-Tex exercised any control over its parent company, Burlington Industries; and (4) Plaintiffs failed to establish that Nano-Tex and Burlington Industries are not separate entities.  *Id*. at 19-21.

## *ANALYSIS*

### I.  The Jurisdiction of this Court to Review the District Court's Dismissal of Plaintiffs' Case for Lack of Personal Jurisdiction

As a threshold matter, the Defendants challenge this Court's jurisdiction to review the district court's dismissal of the Plaintiffs' case for lack of personal jurisdiction on the grounds that Plaintiffs filed a defective FED. R. CIV. P. 59(e) motion, which did not toll the thirty-day period for filing a timely appeal.

*A.  The Effect of a Defective Rule 59 Motion on the Tolling of the Thirty-Day Period for Filing a Timely Appeal*

Rule 4 of the Federal Rules of Appellate Procedure requires that, in a civil case, in which the United States is not a party, an appeal "as of right" must be filed with the district court clerk within thirty days after the judgment or order from which a party appeals is entered.  FED. R. APP. P. 4(a)(1)(A).  A party's compliance with the time strictures of Rule 4(a)(1)(A) is "mandatory and jurisdictional." *Peake v. First Nat'l Bank & Trust*, 717 F.2d 1016, 1018 (6th Cir. 1983) (citations omitted).  Rule 4, however, also provides that a party's timely filed Rule 59 motion tolls the thirty-day time period for filing a notice of appeal.  FED. R. APP. P.  4(a)(4)(A)(iv).  In order for a Rule 59 motion to be deemed "timely," the motion must be served "no later than 10 days after entry of the

judgment."[2]  FED. R. CIV. P. 59(e).  The time for appeal does not begin to run again until the district court disposes of the Rule 59 motion.  FED. R. APP. P. 4(a)(4)(A).

A party who files a Rule 59(e) motion must comply with the motions filing requirements set forth in FED. R. CIV. P. 7(b).  Rule 7(b)(1) states in relevant part,  "An application to the court for an order shall be made by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought."[3]  FED. R. CIV. P. 7(b)(1).  This Court previously has held that a Rule 59 motion is "inadequate," and consequently, does not toll the period for filing a timely appeal under two conditions: (1) when the moving party does not state the "grounds" for the motion as required by Rule 7(b), and (2) when a moving party fails to file his motion within the time frame as provided in Rule 59(e).  *See Linsmeier v. Brown*, 156 F.3d 1230 (6th Cir. 1998) (table), No. 98-1405, 1998 WL 476175, at *1 (6th Cir. Aug. 5, 1998) (holding that a motion for reconsideration in which the movant fails to state the grounds for the motion does not toll the appeal period where the movant's brief in support of such motion is not filed within the 10-day time period as mandated in FED. R. CIV. P. 59(e)); *Sammons v. Rotroff*, 779 F.2d 52 (table), 84-5485, 1985 WL 13827, at *1 (6th Cir. Oct. 7, 1985) (holding that a one sentence motion was "inadequate" as a Rule 59(e) motion to alter or amend a judgment because it failed to state the grounds for the motion as required by FED. R. CIV. P. 7(b), and hence, the appeal period was not tolled).

This Court, however, has not yet considered Rule 7(b)(1)'s requirement that a motion "state with particularity the grounds therefor."  In the absence of such Sixth Circuit authority, the parties rely on cases from other circuits for interpretation of the phrase.

In the Seventh Circuit, "particularity" has been interpreted to mean "reasonable specification."  *Talano v. Northwestern Med. Faculty Found., Inc*., 273 F.3d 757, 760 (7th Cir. 2001) (quoting *Martinez v. Trainor*, 556 F.2d 818, 819-20 (7th Cir. 1977)).  In *Talano*, the court held that the plaintiff's Rule 59 motion lacked the specificity to toll the thirty-day appeal period because in his motion plaintiff sought reconsideration of the district court's dismissal of his action for "several reasons," yet failed to enumerate or otherwise identify the reasons or grounds for reconsideration.[4]  *Id*. at 761.  In *Martinez*, the court noted that "particularity" has been interpreted to mean "reasonable specification," but it held that because the defendant "failed to state even one ground" upon which the district court should grant its Rule 59(e) motion, the defendant did not satisfy the particularity requirement of Rule 7(b)(1).  *Martinez*, 556 F.2d at 820.

In the Third Circuit, Rule 7(b)(1)'s requirement that a motion "state with particularity the grounds therefor," has been liberally construed.  *See Harkins v. Ford Motor Co*., 437 F.2d 276, 276

---

[2] This Court has clarified that the 10-day time period for a Rule 59(e) motion corresponds to the date of service of the motion, and not the date that the motion is filed with the district court.  *Peake v. First Nat'l Bank & Trust*, 717 F.2d 1016, 1019 (6th Cir. 1983) (citation omitted).

[3] Defendants do not dispute that Plaintiffs indicated the relief that they sought from the district court in the Rule 59(e) motion, which is to alter or amend the judgment to a dismissal for lack of personal jurisdiction *without prejudice*.

[4] The plaintiff in *Talano v. Northwestern Med. Faculty Found., Inc*., 273 F.3d 757 (7th Cir. 2001), indicated in his Rule 59(e) motion that he would fully address the "several reasons" as to why he sought reconsideration of the district court's dismissal of his Age Discrimination in Employment Act claims in a memorandum in support, which he sought leave of court to file at a later date.  *Talano*, 273 F.3d at 760.  Subsequently, and outside of the Rule 59(e) 10-day time period, the plaintiff submitted his memorandum in support of his Rule 59(e) motion, which the district court accepted.  *Id*. at 761.  Yet, the *Talano* court held that a party would not be permitted to file a "skeleton" Rule 59(e) motion, and then later provide the requisite particularity after the 10-day period as provided in Rule 59 has expired.  *Id*. (citing *Martinez v. Trainor*, 556 F.2d 818, 820 (7th Cir. 1977); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Wis*., 957 F.2d 515, 516-17 (7th Cir. 1992)).

n.1 (3d Cir. 1970) (noting that as a general matter, courts have liberally interpreted Rule 7(b)(1)'s requirement that a motion "state with particularity the grounds therefor") (citations omitted). Additionally, courts in the Third Circuit have not exalted form over substance when interpreting Rule 7(b)(1)'s particularity requirement.[5]  *See, e.g.*, *Raughley v. Pa. Ry. Co.*, 230 F.2d 387, 391 (3d Cir. 1956) (holding that the "purpose" of Rule 7(b)(1) is "to give a simple and elastic procedure without too much emphasis on form").

Finally, the particularity requirement of Rule 7(b)(1) may be supplemented by local district court rules that require a party to file written motions with concomitant briefs that contain legal argument.  2-7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 7.03[4][c] (3d ed. 2005). In the case sub judice, the district court determined that Plaintiffs' Rule 59(e) motion was not accompanied by a memorandum of law.  *Intera Corp. v. Henderson*, No. 3:03-0755, at 1 (M.D. Tenn. July 29, 2004) (order denying Rule 59(e) motion to alter or amend).  The memorandum of law requirement to which the district court referred is derived from Middle District of Tennessee Local Rule 8(b)(2), which states, in relevant part:

> Every motion that may require the resolution of an issue of law, in either civil or criminal cases, when filed shall be accompanied by a memorandum of law citing supporting authorities. . . . The memorandum submitted in support of a motion shall contain at the outset a short and concise statement of the factual and legal issues which justify the grant of the relief sought.

M.D. TENN. R. 8(b)(2).

### B.  Whether Plaintiffs Filed a "Defective" Rule 59(e) Motion

Defendants claim that Plaintiffs' Rule 59(e) motion was "defective" because it did not comply with either Rule 59(e) or the district court's Local Rules; therefore, it did not toll the thirty-day appeal period.  Specifically, Defendants assert that Plaintiffs failed to set forth grounds for their motion to alter or amend, and the motion was not accompanied by a memorandum of law.  Thus, Defendants argue that because Plaintiffs' defective Rule 59(e) motion did not toll the appeal period, Plaintiffs did not file a timely appeal of the district court's decision, and consequently, this Court lacks jurisdiction to review the district court's dismissal of this case.

Plaintiffs respond that their Rule 59 motion met the requirements imposed by Rules 7(b)(1) and 59(e).  Plaintiffs claim that their Rule 59(e) motion identifies Rule 41 of the Federal Rules of Civil Procedure as the grounds upon which the district court should alter or amend its judgment to dismiss their action for lack of personal jurisdiction to one "without prejudice."[6]  Plaintiffs also contend that they need not cite "more exhaustive" legal authority in order for their Rule 59(e) motion to be effective; instead, a "concise citation" to Rule 41(b) as supporting legal authority is

---

[5]Plaintiffs also rely on *Lack Indus., Inc. v. Ralston Purina Co.*, 327 F.2d 266 (8th Cir. 1964) for the proposition that Rule 7(b)(1)'s requirement that a motion "state with particularity the grounds therefor," is a flexible and reasonable one, which does not elevate form over substance.  Yet, Plaintiff's-Appellants' reliance on *Ralston Purina* is misplaced. In *Ralston Purina*, the court stated that a party's "grounds in its motion for a new trial must be 'reasonably specific'" in order to comply with the particularity requirement imposed by Rule 7(b)(1).  *Id*. at 274.  This appears to be in accordance with the Seventh Circuit's interpretation of the Rule 7(b)(1) particularity requirement.  *See Talano*, 273 F.3d at 760 (holding that the particularity requirement of Rule 7(b)(1) has been interpreted to mean "reasonable specification").  The *Ralston Purina* court, however, does not make any other statements that would lend support to Plaintiffs' proposition that Rule 7(b)(1)'s requirement is flexible, and that it elevates substance over form.

[6]Rule 41(b) provides in relevant part, "Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction . . ., operates as an adjudication upon the merits."  FED. R. CIV. P. 41(b).

sufficient.  Finally, Plaintiffs argue that they incorporated a memorandum of law in their Rule 59(e) motion, and that no particular format for the memorandum of law is required where the relief requested is limited to the specific wording of the cited Rule of Civil Procedure.

This Court agrees that Plaintiffs' motion meets – albeit barely – the requirements of Rules 7(b)(1) and 59(e).  First, consistent with general federal jurisprudence, Plaintiffs reasonably specified, though in a succinct manner, that one ground for the Rule 59(e) motion was to petition the district court to alter or amend its judgment to provide for dismissal without prejudice, as provided in FED. R. CIV. P. 41.  Unlike the plaintiff in *Talano*, the Plaintiffs did not indicate that they were seeking relief for "several reasons" that would later be explicated in a memorandum in support of the motion to be filed with the court outside the 10-day time frame under Rule 59(e).  *Talano*, 273 F.3d at 760-61.  Second, liberally construing FED. R. CIV. P. 7(b)(1)'s particularity requirement as we must, we find that Plaintiffs' concise reference to Rule 41(b) as the legal basis for their Rule 59(e) satisfies the particularity requirement since Plaintiffs identified a specific ground for the motion.  *See Harkins,* 437 F.2d 276.

Finally, under Local Rule 8(b)(2) of the Middle District of Tennessee, a moving party is required to submit a memorandum in support of a Rule 59(e) motion, that must "contain at the outset a short and concise statement of the factual and legal issues which justify the grant of the relief sought."  M.D. TENN. R. 8(b)(2).  The memorandum must also contain citations to "supporting authorities."  *Id.*  In this case, Plaintiffs did not submit a document designated as a "memorandum of law," but they included a brief statement of the procedural posture of the case and cited Rule 41 for legal support that a dismissal for lack of personal jurisdiction should be made "without prejudice."  Nothing in the plain wording of Local Rule 8(b)(2) expressly states or intimates that a "memorandum of law" must be designated as such.  Where, as in the present action, a party moves a court for relief and includes a "short and concise" statement of the issues justifying the grant of relief sought, in addition to citing "supporting authorities," he satisfies the "memorandum of law" requirement of Local Rule 8(b)(2).

Accordingly, Plaintiffs did not file a defective Rule 59(e) motion, the thirty-day appeal period was tolled, and the Court has jurisdiction to review Plaintiffs' appeal of the district court's dismissal of their action.

## II.  Whether the District Court Erred in Dismissing Plaintiffs' Case for Lack of Personal Jurisdiction

### A.  Standard of Review

We review a district court's dismissal for lack of personal jurisdiction *de novo*.  *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).  If the district court, as in the instant action, did not conduct an evidentiary hearing, we must review the pleadings and affidavits in the light most favorable to Plaintiffs, without considering the "controverting" assertions of the Defendants.[7]  *Id.*

---

[7]In their opening brief, Plaintiffs assert that the district court should have permitted discovery in order to "ascertain" the facts surrounding their relationship with Defendants.  Specifically, Plaintiffs argue that discovery should be conducted so that they may determine whether the references to corporate employees and officers, and their confidentiality duties in the license agreement between Intera and Burlington Industries extends to tort actions in Tennessee against employees of the parties to the contract.

If the district court rules on a FED. R. CIV. P. 12(b)(2) motion before trial, as in this case, it has the discretion to adopt any of the following courses of action:  (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion.  *Serras v. First Tenn. Bank Nat'l Ass'n.*, 875 F.2d 1212, 1214 (6th Cir. 1989).  The district court in the present action neither permitted discovery nor held an evidentiary hearing.  Instead, it decided the Rule 12(b)(2) motion on the pleadings, affidavits, and "other evidence" before it.  *Intera Corp. v. Henderson*, No. 3:03-0755, slip op. at 9 (M.D.

### B. Dismissal for Lack of Personal Jurisdiction

As a threshold matter, Plaintiffs do not challenge the determinations the district court made with respect to its lack of personal jurisdiction over Nano-Tex. The district court held that it lacked personal jurisdiction over Nano-Tex because Plaintiffs: (1) did not allege facts intimating that Nano-Tex has any "apparent" contacts with Tennessee; (2) failed to establish that Nano-Tex is the alter-ego of Henderson and Englar such that the company has no personality separate from Henderson and Englar; (3) failed to establish that Nano-Tex exercised any control over its parent company, Burlington Industries; and (4) provided no evidence that Nano-Tex and Burlington Industries are not separate entities. *Intera Corp. v. Henderson*, No. 3:03-0755, slip op. at 19-21 (M.D. Tenn. May 26, 2004). Because Plaintiffs failed to raise any issues as to the district court's jurisdictional findings regarding Nano-Tex, they have abandoned the issue of whether the district court had personal jurisdiction over the company. *Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument respecting the issue in his brief).

### 1. "General" v. "Specific" Personal Jurisdiction

The plaintiff bears the burden of making a prima facie showing of the court's personal jurisdiction over the defendant. *Id.*; *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Personal jurisdiction may be either "general" or "specific." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). General jurisdiction exists when a defendant's "contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Id.* (citing *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). In the present action, the district court held that although Plaintiffs have not conceded that the court lacks general jurisdiction over Defendants, they predicated their prima facie case of personal jurisdiction on specific jurisdiction. *Intera Corp.*, No. 3:03-0755, at 10. Plaintiffs do not challenge this finding on appeal. Therefore, we limit our personal jurisdiction analysis to a discussion of specific jurisdiction.

An exercise of specific jurisdiction is proper where the claims in the case arise from or are related to the defendant's contacts with the forum state. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). In *Southern Machine Company v. Mohasco Industries, Inc.*, we promulgated a three-prong test that not only guides the determination of whether specific jurisdiction exists, but also protects the due process rights of a defendant. *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). The *Southern Machine* test provides:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.*

---

Tenn. May 26, 2004). Plaintiffs do not argue that the district court abused its discretion by relying on the pleadings, affidavits, and "other evidence" as opposed to allowing the parties to conduct discovery. Therefore, Plaintiffs' argument that the district court should have permitted discovery before ruling on the Rule 12(b)(2) motion lacks merit.

## *2. Tennessee's Long-Arm Statute*

In a diversity action, the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations. *Calphalon Corp.*, 228 F.3d at 721; *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994). A court's exercise of personal jurisdiction over a nonresident defendant is appropriate only if it meets the state's long-arm statute and constitutional due process requirements. *Calphalon Corp.*, 228 F.3d at 721. Furthermore, the Court's exercise of jurisdiction comports with due process when the defendant has sufficient minimal contacts such that "'traditional notions of fair play and substantial justice' are not offended." *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In the case sub judice, the Tennessee long-arm statute provides the relevant governing state statute, which assists a court in determining whether any action or claim for relief arises from a nonresident defendant's conduct within the state. Tennessee's long-arm statute pertains to: "the transaction of any business within the state"; "any tortious act or omission within this state"; "the ownership or possession of any interest in property located within this state"; or "entering into a contract for services to be rendered or for materials to be furnished in this state." TENN. CODE § 20-2-214(a)(1), (2), (3), and (5). Section 20-2-214(c) also permits the exercise of personal jurisdiction over a defendant when he undertakes any of the above actions through an "agent or personal representative." TENN. CODE § 20-2-214(c).

Tennessee's long-arm statute has been interpreted to be "coterminous with the limits on personal jurisdiction imposed" by the Due Process Clause of the United States Constitution, and thus, "the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical." *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993). *See also Aristech Chem. Int'l v. Acrylic Fabricators*, 138 F.3d 624, 627 (6th Cir. 1998) ("[W]hen a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge and the court 'need only determine whether the assertion of personal jurisdiction . . . violates constitutional due process.'" (quoting *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996)).

## *3. Purposeful Availment*

This Court views the purposeful availment prong of the *Southern Machine* test as "essential" to a finding of personal jurisdiction. *Calphalon Corp.*, 228 F.3d at 722 (citing *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300 (6th Cir. 1989)). The purposeful availment requirement serves to protect a defendant from being haled into a jurisdiction by virtue of "random," "fortuitous," or "attenuated" contacts. *Id.* (citations omitted). We have held previously that purposeful availment may exist when a defendant makes telephone calls and sends facsimiles into the forum state and such communications "form the bases for the action." *Neal*, 270 F.3d at 332. In a similar vein, we have held that the "actual content" of the communications into the forum state that give rise to an intentional tort action may constitute purposeful availment. *Id.*

Finally, because of Henderson's and Englar's status as corporate officers of Burlington Industries and Nano-Tex, it is essential to note that "where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.*, whether [the agent] purposely availed [himself] of the forum and the reasonably foreseeable consequences of that availment." *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (citations omitted).

Plaintiffs concede that Defendants Henderson and Englar are not residents of Tennessee. They also admit that Henderson and Englar did not engage in any of the alleged deceptive actions within Tennessee. Additionally, Plaintiffs do not allege facts suggesting that Henderson and Englar

have transacted business in Tennessee in their personal or official capacities as corporate officers, or that Henderson and Englar own or possess interests in property located within the state.

Instead, Plaintiffs argue that Henderson and Englar have purposely availed themselves of the forum state because (1) they used the license agreement between Intera and Burlington Woven as the vehicle through which they obtained Intera's "know how," which (2) they in turn appropriated to their use and benefit, and (3) they knew the license agreement provides for a Tennessee jurisdictional forum for disputes arising from the agreement and it requires Burlington Industries' employees who have access to Intera's "know how" and technology to keep the information confidential. Plaintiffs, however, do not explain why Henderson's and Englar's knowledge of the choice-of-law provision in the license agreement between Intera and Burlington Woven demonstrates that they deliberately affiliated themselves with Tennessee, or that Henderson and Englar could reasonably expect to become embroiled in possible litigation in Tennessee. *See Calphalon Corp.*, 228 F.3d at 723 (stating that "even though [the defendant] was on notice that the contract was to be governed by Ohio law, it did not make deliberate affiliation with that state nor could it reasonably foresee possible litigation there"). We reached this conclusion in *Calphalon* notwithstanding the fact that the defendant in that case was an actual party to the contract in dispute. *Id.* at 720. In the present action, neither Henderson nor Englar was a party to the license agreement between Intera and Burlington Woven.

Moreover, while Plaintiffs argue that Henderson and Englar purposefully availed themselves of the forum state by engaging in fraudulent or conspiratorial conduct outside of Tennessee, which would have reasonably foreseeable consequences in the state, we decline to decide this argument because it was not presented to the district court. *See Elkins v. Richardson-Merrell, Inc.*, 8 F.3d 1068, 1072 (6th Cir. 1993) (holding that "this court does not normally address issues raised for the first time on appeal") (internal quotation marks and citations omitted).

Plaintiffs also proffer letter correspondence between James E. Klopman, Intera Corporation's Vice President of Marketing, and Defendant Henderson, in which Henderson expressed his gratitude to Klopman for sending a knit shirt to him. Yet, Henderson did not send the letter to or from Tennessee. Finally, Plaintiffs do not allege that Henderson and Englar made telephone calls, or sent facsimiles to Tennessee which "form the bases" for the action pending before this Court. *Neal*, 270 F.3d at 332.

Based upon the foregoing, we hold that the district court did not err when it concluded that Defendants Henderson and Englar did not purposefully avail themselves of the privilege of acting in Tennessee.

### 4. Arising From

We have held that the "arising from" prong of the *Southern Machine* test is satisfied "when the operative facts of the controversy arise from the defendant's contacts with the state." *Calphalon*, 228 F.3d at 723. Furthermore, in analyzing the second prong of the *Southern Machine* test, this Court has previously held that "physical presence is not the touchstone of personal jurisdiction," and hence, personal jurisdiction may exist over a defendant although he is not physically present in the forum if he "purposefully directs communications into the forum, and those communications form the 'heart' of the cause of action." *Neal*, 270 F.3d at 333.

In this case, Plaintiffs have presented no facts suggesting that Defendants Henderson and Englar have had contact with Tennessee either in a personal or an official capacity as corporate officers. Even accepting as true Plaintiffs' contention that the implementation of the license agreement between Intera and Burlington Woven required Burlington Industries' officers and representatives to have "substantial and regular" contact with Intera, Plaintiffs do not assert facts tending to show that Henderson and Englar had such contact with Intera in Tennessee.

Thus, the district court did not err when it concluded that Plaintiffs have not satisfied prong two, the "arising from" requirement of the *Southern Machine* test.

### 5. Reasonableness

If prongs one and two of *Southern Machine* test are satisfied, then there is an inference that the reasonableness prong is satisfied as well. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996) (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988)). Because we find that Plaintiffs have failed to satisfy the "purposeful availment" and "arising from" requirements of the *Southern Machine* test, an inference of reasonableness is not warranted in this case.

The third prong of the *Southern Machine* test mandates that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *See Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003) (citation omitted). Generally, when considering whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, a court must consider several factors including the following: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy. *Patterson*, 89 F.3d at 1268. First, Defendants Henderson and Englar would be substantially burdened if they were compelled to litigate this case in Tennessee given the fact that neither defendant resides in the state. Yet, we have deemed specific jurisdiction to be proper even when a defendant would be compelled to travel. *See Youn*, 324 F.3d at 420 (citing *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 911-12 (6th Cir. 1988) (permitting personal jurisdiction in Michigan over Illinois defendant); *Cohn*, 839 F.2d at 1170-71 (upholding personal jurisdiction in Ohio over California defendant)).

Second, Tennessee would have a strong interest in exercising jurisdiction over Henderson and Englar because Plaintiffs are resident corporations of the state of Tennessee, which would have an interest in "protecting its residents' legal options." *Youn*, 324 F.3d at 419. Nevertheless, Plaintiffs' concession that Defendants Henderson and Englar did not commit their alleged deceptive acts within the geographical confines of Tennessee appears to diminish the state's purported strong interest. Furthermore, the choice-of-law provision of the license agreement between Intera and Burlington Woven which provides that all disputes arising under the agreement would be decided by Tennessee law, in a Tennessee forum, does not confer an interest upon Tennessee in this case. The existence of a choice-of-law provision, standing alone, is insufficient to establish jurisdiction, but such a provision may "reinforce [a] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Calphalon Corp.*, 228 F.3d at 723 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985)). In the present action, Defendants were not parties to the Intera-Burlington Woven license agreement, and consequently, neither defendant could have reasonably expected to be haled into a Tennessee court.

Third, Plaintiffs have a substantial interest in obtaining relief. Fourth, given the fact that Defendants claim to be residents of North Carolina where they were employed as corporate officers of Burlington Industries and Nano-Tex, and Plaintiffs admit that Henderson and Englar did not engage in fraudulent acts within the state of Tennessee, it appears that the state of North Carolina may have a strong interest in resolving this controversy.

For the foregoing reasons, we conclude that it would not be reasonable for a Tennessee court to exercise personal jurisdiction over Defendants Henderson and Englar because Henderson and Englar do not have a substantial enough connection with the forum state. Because we hold that Plaintiffs have failed to establish all three prongs of the *Southern Machine* test for specific

jurisdiction, we **AFFIRM** the district court's dismissal of Plaintiffs' action for lack of personal jurisdiction.

### III. Whether Appellants Abandoned Their Appeal of the District Court's Denial of the FED. R. CIV. P. 59(e) Motion

Defendants argue that Plaintiffs have abandoned their appeal from the district court's denial of their Rule 59(e) motion because Plaintiffs did not present arguments concerning the district court's denial of the motion in their opening brief. Plaintiffs respond that they have not abandoned their Rule 59(e) appeal because in their opening brief, they addressed the district court's error in denying the Rule 59(e) motion.

Contrary to Defendants' assertion, Plaintiffs have not abandoned their appeal of the district court's denial of their Rule 59(e) motion. As set forth above, a party's failure to present argument on a particular issue that he has appealed will constitute abandonment. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument respecting the issue in his brief); *see also Preferred Automotive Sales Inc. v. Kocis*, No. 02-5946, 2003 WL 1795800, at *1 (6th Cir. Apr. 1, 2003) (holding that the defendant "abandoned his appeal by failing to brief the germane issue: whether the district court erred in denying his motion for reconsideration"). In their opening brief, Plaintiffs assert that the district court's dismissal of their case for lack of personal jurisdiction should have been without prejudice, consistent with the provisions of FED. R. CIV. P. 41(b). While Plaintiffs did not state expressly that the district court "erred in denying their Rule 59(e) motion," they raised an identical "dismissal without prejudice" argument in their Rule 59(e) motion that they filed with the district court.

Accordingly, Plaintiffs have not abandoned their Rule 59(e) appeal, and the Court now turns to the final issue of whether the district court erred in denying Plaintiffs' Rule 59(e) motion.

### IV. Whether the District Court Erred When it Denied Plaintiffs' FED. R. CIV. P. 59(e) Motion

#### A. Standard of Review

Generally, we review a denial of a Rule 59(e) motion to alter or amend a judgment for abuse of discretion. *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 518 (6th Cir. 1998). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an[] erroneous legal standard." *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995) (internal quotation marks and citations omitted).

#### B. The District Court's Order Denying Plaintiffs' Motion

In Plaintiffs' Rule 59(e) motion, they petitioned the district court to alter or amend its judgment by designating dismissal for lack of personal jurisdiction to be "without prejudice," in accordance with FED. R. CIV. P. 41.[8] In denying the Plaintiffs' Rule 59(e) motion, the district court held that their motion: (1) did not set forth any grounds for their request; (2) was not accompanied by a memorandum of law; (3) made no showing of any legal error, newly discovered evidence, change in law, or manifest injustice; and (4) provided no basis for amending its dismissal of

---

[8]In the alternative, Plaintiffs requested that the district court transfer the case to the state of North Carolina pursuant to 28 U.S.C. § 1406(a). On appeal, however, Plaintiffs do not argue that the district court erred when it denied their transfer request. Thus, this issue is deemed abandoned. *Sommer*, 317 F.3d at 691.

Plaintiffs' claims with prejudice.**[9]** *Intera Corp. v. Henderson*, No. 3:03-0755, at 1 (M.D. Tenn. July 29, 2004 (order denying Rule 59(e) motion to alter or amend).

A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted). It is apparent that Plaintiffs did not predicate their Rule 59(e) motion on the grounds of newly discovered evidence or an intervening change in controlling law. It is not evident, however, whether Plaintiffs premise their motion on the district court's clear error of law or whether they contend that the judgment should be altered or amended to prevent manifest injustice. Based upon a plain reading of FED. R. CIV. P. 41(b), and the facts of this case, we hold that the district court clearly erred when it dismissed Plaintiffs' action for lack of personal jurisdiction "with prejudice."

Our reasons in support of this conclusion are two-fold. First, our conclusion is entirely consistent with the language of Rule 41(b), which provides in relevant part, "Unless the court in its order for dismissal otherwise specifies, *a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction . . ., operates as an adjudication upon the merits*." FED. R. CIV. P. 41(b) (emphasis added). Thus, under Rule 41(b), dismissals for lack of personal jurisdiction should be made "without prejudice."

Second, in declaring that a dismissal for lack of jurisdiction does not "operate[] as an adjudication upon the merits," Rule 41(b) does not distinguish between subject matter and personal jurisdiction. FED. R. CIV. P. 41(b). Within the subject matter jurisdiction context, we have interpreted Rule 41(b) to mean that "a dismissal for lack of subject matter jurisdiction does not operate as an adjudication on the merits for preclusive purposes." *See Pratt v. Ventas, Inc.*, 365 F.3d 514, 522 (6th Cir. 2004) (citing *Holloway v. Brush*, 220 F.3d 767, 778 (6th Cir. 2000) (citing FED. R. CIV. P. 41(b))). This Court has explained the rationale underlying this rule:

> [M]erely because one court does not have jurisdiction over a dispute does not necessarily mean that another court is precluded from properly exercising jurisdiction over the matter. Moreover, if a court does not have jurisdiction over a matter, it cannot properly reach the merits of the case.

*Id*. (quoting *Wilkins v. Jakeway*, 183 F.3d 528, 533 n.6 (6th Cir. 1999)).

By logical extension, our rationale in *Pratt* applies with equal force to the personal jurisdiction context. Although Tennessee courts lack personal jurisdiction over Defendants Henderson and Englar, this does not lead to the inexorable conclusion that no court has personal jurisdiction over these defendants. Furthermore, upon a determination that personal jurisdiction is lacking, a court should not dismiss a case on the merits, especially when it appears that another court with appropriate jurisdiction may resolve the issues between the parties. In this case, because Henderson and Englar are residents of North Carolina, and many, if not all, of the alleged deceptive actions may have occurred in that state, the courts of North Carolina may be able to address Plaintiffs' claims against Defendants.

Finally, in reaching our holding, we do not place our imprimatur on vague or ambiguously worded petitions for Rule 59(e) relief. Moving parties are exhorted to state with clarity the basis for their Rule 59(e) motions. Nevertheless, under the facts of this case and in light of our discussion of the meaning of Rule 41(b), the requested relief is appropriate.

---

**[9]***See supra* Part I.B. for a discussion of the Court's findings with respect to whether Plaintiffs set forth the grounds for their Rule 59(e) motion, and whether they submitted a "memorandum of law" as prescribed by Local Rule 8(b)(2) of the Middle District of Tennessee.

## *CONCLUSION*

For the foregoing reasons, we **AFFIRM** the district court's dismissal of Plaintiffs' case for lack of personal jurisdiction, and we **REVERSE** the district court's "with prejudice" dismissal and **REMAND** for a judgment entry of case dismissal "without prejudice."