Ahmad BISHAWI, Plaintiff–Appellant,

v.

NORTHEAST OHIO CORRECTIONAL
CENTER, et al., Defendants–
Appellees.

No. 14–3194.

United States Court of Appeals,
Sixth Circuit.

Dec. 17, 2014.

Before: GUY, SUHRHEINRICH, and KETHLEDGE, Circuit Judges.

## ORDER

Ahmad Bishawi, a former federal prisoner proceeding pro se, appeals the district court's judgment dismissing his civil rights complaint construed as filed pursuant to the doctrine announced in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). This case has been referred to a panel of the court pursuant to Federal Rule of Appellate Procedure 34(a)(2)(C). Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Seeking monetary and declaratory relief, Bishawi filed a civil rights and state tort action against Northeast Ohio Correctional Center ("NEOCC"), Corrections Corporation of America ("CCA"), and fourteen of NEOCC's employees. Bishawi alleged negligence, intentional and/or negligent infliction of mental or emotional distress, retaliation and cover-up, procedural and substantive due process violations, racial discrimination, cruel and unusual punishment, and conspiracy in violation of 42 U.S.C. §§ 1983, 1985, and 1986; and 18 U.S.C. § 241.

The district court construed the complaint as being filed pursuant to *Bivens,* and dismissed it under the screening provisions of 28 U.S.C. § 1915(e), concluding that: (1) under *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001), *Bivens* does not extend to the claims against CCA and NEOCC; (2) under *Minneci v. Pollard,* —— U.S. ——, 132 S.Ct. 617, 181 L.Ed.2d 606 (2012), *Bivens* does not provide a federal remedy for claims with alternative state tort law remedy, (3) Bishawi failed to state a claim for retaliation; (4) Bishawi failed to state a claim for a denial of procedural due process; (5) his substantive due process claim was duplicative of his First Amendment retaliation claim; (6) Bishawi failed to show an equal protection violation; (7) the prison conditions described by Bishawi did not amount to an Eighth Amendment violation; and (8) Bishawi failed to provide any factual allegations to support his conspiracy claims.

Bishawi moved for reconsideration under Federal Rule of Civil Procedure 59(e), arguing, in part, that § 1983 allows suit against NEOCC and its employees because NEOCC was a "state actor" under contract with the City of Youngstown, Ohio. The district court denied the motion.

On appeal, Bishawi argues that: (1) NEOCC is a state actor for the purposes of § 1983 because it operates under contract with the City of Youngstown; (2) the district court erred in requiring a heightened pleading standard; (3) the district court erred in denying Bishawi's request that his complaint be dismissed "without prejudice" if his Rule 59(e) motion was denied; (4) the district court erred by denying him the opportunity to amend his complaint upon denying his Rule 59(e) motion; and (5) the district court "abused its discretion."

Under the Prison Litigation Reform Act, district courts must screen and dismiss any complaint filed by a prisoner against a governmental entity or an officer or employee of a governmental entity that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a), (b); *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir.2008). We review de novo a district court's dismissal of a suit under §§ 1915(e)(2) and 1915A. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). "[T]o survive scrutiny under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hill*, 630 F.3d at 471 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

## I. *Section 1983—Privately Owned Prisons*

Bishawi first challenges the district court's determination that his complaint could not be brought under § 1983. Bishawi argues that CCA, NEOCC, and its employees should be considered state actors because the prison was under contract with the City of Youngstown, Ohio, for conveyance of the land on which the prison was built and because NEOCC was subject to State of Ohio inspections. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Federal Constitution or laws and that the violation was committed by a person acting under color of state law. *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir.2006) (citing *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). When a defendant is a private entity, the entity can be held liable under § 1983 only if its conduct may be "fairly attributable *to the state.*" *Lugar v.*

*Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (emphasis added); *Richardson v. McKnight*, 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997).

At the time of the events complained of, Bishawi was incarcerated at NEOCC, a private prison owned and operated by CCA, a private corporation, to provide services for the federal government. Because NEOCC does not provide services on behalf of the state, neither NEOCC nor CCA were acting under the color of state law for the purposes of § 1983. Further, NEOCC's employees cannot be considered state actors because they are employees of a privately operated prison, operated for the federal government. Thus, the district court correctly found that § 1983 is not applicable to this case.

## II. *Bivens Claims*

Bishawi next argues that, by dismissing his complaint for failure to state a claim, the district court erroneously required a heightened pleading standard. "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677–78, 129 S.Ct. 1937 (quoting Fed.R.Civ.P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* at 678, 129 S.Ct. 1937 (internal citation and quotation marks omitted). A complaint that sets forth conclusory allegations of discriminatory intent or unconstitutional conduct without additional supporting details is not sufficient to support relief. *Id.*

### A. *Retaliation Claims*

Bishawi alleges that Gozman, Yemma, Aikens, Grigsby, Kelty, and Mackey retali-

ated against him because he had filed grievances, requested an investigation regarding the charges against him, made complaints, and pursued a lawsuit. To establish a First Amendment retaliation claim, "a prisoner must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill,* 630 F.3d at 472 (quoting *Thaddeus–X v. Blatter,* 175 F.3d 378, 394, 398 (6th Cir.1999) (en banc)). The district court found that Bishawi had engaged in protected conduct and had established adverse actions as to defendants Aikens, Grigsby, Kelty, and Gozman, but not as to defendants Yemma and Mackey. The court concluded, however, that he had failed to show that the adverse actions were related to the protected conduct.

■ Assuming that Bishawi was engaged in protected conduct and that the defendants' actions were adverse, the district court correctly found that Bishawi failed to show that the adverse actions were motivated by his protected conduct. Aikens filed a misconduct report against Bishawi for refusing an order and insolence to staff because he was shaking hands with other inmates instead of staying in line as ordered. These facts support a legitimate basis for filing a misconduct report and do not point to any type of retaliatory action. Bishawi has failed to show that Grigsby retaliated against him because Grigsby only signed the administrative detention order, which was facially legitimate. Bishawi has also failed to show that Kelty acted in retaliation when she signed a different administrative detention order.

Likewise, Bishawi's claim against Gozman does not state a claim for retaliation. Bishawi alleged that Gozman refused to review the security tape of the incident and kept him in segregation in retaliation for requesting an investigation. Gozman initially guessed that the investigation would take one to two weeks but, during the pendency of the investigation, a threat charge was issued against Bishawi. On March 2, 2011, almost two months after Bishawi requested an investigation, Bishawi asked Gozman about the status of his case and was told that he was in segregation because he was a Muslim and a threat to Christians. Bishawi claims that there were no threat charges against him. These allegations do not support a claim for retaliation because Bishawi has failed to show that Gozman kept Bishawi in segregation in retaliation for appealing the misconduct report.

Bishawi's retaliation complaints against Yemma and Mackey also fail. Bishawi's only allegation involving Yemma is that he asked Yemma on January 13, 2011, about the status of the investigation and that Yemma stated that he was being held on a new charge. This does not amount to an adverse action. Bishawi's complaints against Mackey—that she did not visit on Tuesday, February 22, 2011, and that she changed Bishawi's job position in August 2012—also do not provide any basis for a retaliation finding. Thus, the district court correctly held that Bishawi has failed to state a retaliation claim against any of these six defendants.

### B.  *Due Process Claims*

Bishawi's due process claims also fail. "To establish a procedural due process violation, [the plaintiff] is required to demonstrate three elements: (1) that [he] had a life, liberty, or property interest protected by the Due Process Clause of the

[Fifth] Amendment; (2) that [he] was deprived of that protected interest within the meaning of the due process clause; and (3) that the [defendants] did not afford [him] adequate procedural rights before depriving [him] of [his] protected interest." *Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio,* 610 F.3d 340, 349 (6th Cir.2010). When a liberty interest is at stake, the loss of liberty must be more than inconsequential; it must extend the duration of the prisoner's sentence or be an atypical or significant deprivation. *Ingram v. Jewell,* 94 Fed.Appx. 271, 273 (6th Cir.2004) (citing *Sandin v. Conner,* 515 U.S. 472, 484, 486–87, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

Bishawi claims that Gozman, Yemma, Aikens, Grigsby, Mollic, Kelty, Rushing, Pugh, and Johnson violated his procedural due process rights by holding him in segregation for sixty-nine days from January to March 2011. However, prolonged or indefinite confinement in administrative segregation may implicate due process considerations. *See, e.g., Wilkinson v. Austin,* 545 U.S. 209, 224, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005).

■ Here, Bishawi was told that he would be kept in segregation pending the outcome of the investigation he requested. Although Bishawi was originally told that the investigation could take one to two weeks, it was complicated by the fact that an alleged threat charge was also being investigated while he was in segregation. Finally, Bishawi was told on March 6, 2011, that there were no more charges or investigations pending, and he was released four days later. This delay does not rise to a procedural due process violation.

Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (citations omitted). However, "'if a constitutional claim is covered by a specific constitutional provision, ... the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 843, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quoting *United States v. Lanier,* 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)). Bishawi alleges that his substantive due process rights were violated because the same defendants issued false misconduct reports, fabricated charges, placed him in segregation for sixty-nine days, and suspended most of his privileges because he filed grievances and requested an investigation into the charges against him. The district court correctly found that this claim was duplicative of Bishawi's First Amendment retaliation claim, and properly addressed it under the retaliation standard.

### C. *Equal Protection Claims*

Bishawi next alleges equal protection violations by Gozman and Mackey, as well as "a garden-variety equal protection challenge" because he is a member of an identifiable group. The equal-protection component of the Fifth Amendment protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights. *Center for Bio–Ethical Reform v. Napolitano,* 648 F.3d 365, 379 (6th Cir.2011). When an action "adversely affects a 'suspect class,' such as one defined by race, alienage, or national origin, or invades a 'fundamental right,' such as speech or religious freedom, the [action] will be sustained only if it is 'suitably tailored to serve a compelling state interest.'" *Harbin–Bey v. Rutter,* 420 F.3d 571, 576 (6th Cir.2005) (quoting *City of*

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). Conclusory equal protection claims, without specific factual allegations, are inadequate to state a civil rights claim. *Harden–Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir.2008).

█ Bishawi's complaint contains factual allegations against Gozman which, when accepted as true, are sufficient to survive dismissal under § 1915(e)(2)(B). Bishawi was originally placed in segregation on January 1, 2011. At that time, Bishawi requested an investigation into the matter. On January 6, 2011, Gozman met with Bishawi and told him that if he wanted to pursue the investigation, he would have to stay in segregation until the investigation was complete, which he guessed would take one to two weeks. Bishawi requested that he be allowed back into the general population during that time, but Gozman denied this request and kept him in segregation.

On March 2, 2011, two months after he had entered segregation, Bishawi asked Gozman why he was still in segregation. Gozman replied: "Mr. Bishawi you put yourself in segregation, I did not put you here." When he asked how he put himself there, Gozman told him it was because he was Muslim and a threat to Christians. However, Bishawi was never officially charged with making a threat. The district court dismissed this claim because the conversation between Gozman and Bishawi took place two months after he was first told that there was a threat charge against him. Therefore, the district court found that there was no connection between Gozman's statements about Bishawi's religion and the reason he was being held in segregation. Bishawi's complaint, however, establishes an equal protection claim because he has stated facts sufficient to show a religiously motivated animus by Gozman

based on the comments he made regarding Bishawi's extended time in segregation.

█ Although Bishawi's equal protection claim against Gozman survives a § 1915 dismissal, his claims that Mackey harassed, intimidated, humiliated, and discriminated against him beginning in 2007; harassed and intimidated his "Arab friends" at NEOCC; sentenced Bishawi to sixty days loss of commissary privileges for allegedly failing to stand up for a count when his cell mate, nationality unknown, was sentenced to only fifteen days; changed his work assignment; and increased his financial responsibility payments fail because he had not pleaded facts sufficient to show that Mackey's actions were related to Bishawi's religion. Bishawi's "garden-variety equal protection challenge" fails because he has not shown that he was treated differently from similarly situated non-Muslims.

D. *Eighth Amendment—Prison–Conditions Claims*

█ Bishawi alleges a violation of his Eighth Amendment rights based on conditions of confinement at NEOCC. The Eighth Amendment prohibits any punishment that violates civilized standards of decency or "involve[s] the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). To establish an Eighth Amendment violation, a prisoner must demonstrate that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). The inconveniences that Bishawi describes—cancellation of activities, frequent lockdowns, limited library hours, pat-down searches, restricted access to certain amenities, a muddy recreation

yard, the price of commissary goods, lines for the restroom, and loss of certain privileges while in segregation—are insufficient to support an Eighth Amendment claim. *See Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

### E. *Conspiracy Claims*

The district court also found that Bishawi failed to plead facts sufficient to support his conspiracy claims. Bishawi alleged that all sixteen defendants had conspired with each other to inflict injury upon him and deprive him of his constitutional rights and privileges under 42 U.S.C. §§ 1983, 1985, 1986, and 18 U.S.C. § 241. As stated earlier, none of the defendants can be considered state actors for the purposes of a § 1983 claim.

■ Section 1985 creates a cause of action when an underlying civil rights violation is the result of a conspiracy. The elements of a § 1985(3) claim are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Vakilian v. Shaw,* 335 F.3d 509, 518 (6th Cir.2003) (quoting *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). Bishawi states that the "defendants falsified reports, misrepresented facts, filed false charges, harassed, attempted to intimidate, opress [sic], threatened, implied illegal procedures, illegal actions, misconducts, discriminated, and negligence and/or rekless [sic] disregard for the truth ... etc." These conclusory and vague allegations are not suffi-

cient to satisfactorily plead a § 1985 claim. *Spadafore v. Gardner,* 330 F.3d 849, 854 (6th Cir.2003). Because Bishawi's § 1985 claim fails, so must his § 1986 claim, which provides a cause of action against anyone who knew of a § 1985 conspiracy and, having the power to prevent or aid in preventing the implementation of the conspiracy, neglected to do so.

Lastly, Bishawi is not entitled to relief under 18 U.S.C. § 241 because this statute does not provide for a private cause of action for conspiracy. *See United States v. Oguaju,* 76 Fed.Appx. 579, 581 (6th Cir. 2003).

### III. *Denial of Rule 59(e) Motion*

Finally, Bishawi argues that the district court abused its discretion in denying his Rule 59(e) motion. *See Intera Corp. v. Henderson,* 428 F.3d 605, 619 (6th Cir. 2005). "A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Id.* at 620. "To constitute 'newly discovered evidence,' the evidence must have been previously unavailable." *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir.1999).

■ Bishawi did not make any of these showings. He attached two pieces of evidence to his motion: the contract between the City of Youngstown, Ohio, and CCA for the conveyance of land to be used for NEOCC; and a Correctional Institution Inspection Committee report from an inspection in 2011. There is no indication, however, that this evidence was previously unavailable.

Bishawi contends that a manifest injustice occurred when the district court did not dismiss his claim "without prejudice" upon denying his Rule 59(e) motion. There is no rule requiring the district court to dismiss the complaint without

prejudice if requested to do so by the complainant. Bishawi cites Federal Rule of Civil Procedure 41, but that rule, which concerns voluntary dismissals and dismissals for failure to prosecute or to comply with a court order, does not apply to this case.

Similarly, Bishawi does not cite any case law to support his claim that the district court erred when it did not provide him the opportunity to amend his complaint if it denied his Rule 59(e) motion. Although a district court may allow a plaintiff to amend his complaint before entering a sua sponte dismissal, it is not required to do so, *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir.2013), and leave to amend should be denied if the amendment would be futile. *See Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir.1995). Bishawi fails to identify any amendment that could have saved his complaint.

Bishawi acknowledged in his Rule 59(e) motion that his claims for negligence and intentional and/or negligent infliction of mental or emotional distress claims were state tort law claims, but summarily argues that the district court should have exercised supplemental jurisdiction over those claims. Because no abuse of discretion is evident, we will not overturn the district court's decision to not exercise supplemental jurisdiction. *See Weeks v. Portage Cnty. Exec. Offices,* 235 F.3d 275, 279–80 (6th Cir.2000); *see also* 28 U.S.C. § 1367(c)(3).

For the foregoing reasons, the district court's judgment is reversed as to the equal protection claim against Gozman, and affirmed in all other respects. The case is remanded to the district court for further proceedings consistent with this order.