RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0143p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
—————————————

WAYNE EARL LAFOUNTAIN,

      *Plaintiff-Appellant*,

    *v.*

SHIRLEE HARRY, Warden, Muskegon
Correctional Facility, et al.,

      *Defendants-Appellees*.

No. 11-1496

—————————————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:10-cv-943—Robert J. Jonker, District Judge.

Argued: March 6, 2013

Decided and Filed: May 22, 2013

Before: MOORE, GIBBONS, and KETHLEDGE, Circuit Judges.

—————————————

### COUNSEL

**ARGUED:** Alistair E. Newbern, Seamus E. Kelly, VANDERBILT APPELLATE LITIGATION CLINIC, Nashville, Tennessee, for Appellant. Clifton B. Schneider, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Alistair E. Newbern, VANDERBILT APPELLATE LITIGATION CLINIC, Nashville, Tennessee, for Appellant. A. Peter Govorchin, Michael R. Dean, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

—————————————

### OPINION

—————————————

KETHLEDGE, Circuit Judge. Michigan prisoner Wayne Earl LaFountain sued the defendant prison officials, alleging that they retaliated against him for filing administrative grievances and lawsuits. The district court screened LaFountain's complaint pursuant to the Prison Litigation Reform Act and dismissed it with prejudice

1

for failure to state a claim.  28 U.S.C. §§ 1915A(b)(1) & 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1).  We reverse in part and vacate in part.

I.

The facts set forth below are based solely on the allegations in LaFountain's complaint.  *See Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011).  In 2006, the Michigan Department of Corrections agreed to house LaFountain at the Lakeland Correctional Facility in exchange for the dismissal of two lawsuits he had previously filed.  LaFountain wanted the Department to house him at Lakeland so that he could receive family visits and avoid further retaliation from correctional officers at the Muskegon Correctional Facility, where he had been housed in the past.  After he was transferred to Lakeland, LaFountain filed two grievances against three prison officials: Dan Hawkins, Bonita Hofner, and "third-shift Captain, Unknown Cooley."  LaFountain alleged that these officials selectively enforced housing-unit rules based on race.  The day that LaFountain filed the second grievance, Hawkins and Hofner transferred him back to Muskegon.

In preparation for the transfer, Cooley directed LaFountain to pack up his personal property, including his typewriter.  Officers working the prison's third shift then took possession of LaFountain's property.  When LaFountain arrived at Muskegon, his typewriter was missing.  So he filed another grievance, this time alleging that Hawkins, Hofner, and Cooley had retaliated against him by withholding the typewriter.  LaFountain eventually got the typewriter back, but somebody had removed its screws and it was in pieces.  LaFountain thereafter paid $280 to repair it.

When LaFountain arrived at Muskegon, Warden Shirlee Harry assigned him to a cell with Jimmy Riley, a mentally ill prisoner.  Riley insulted and threatened LaFountain.  Riley also kept LaFountain up at night by leaving the lights on and making excessive noise.  LaFountain repeatedly asked the Muskegon Resident Unit Manager, Brett Barbier, and the Assistant Deputy Warden of Housing, Sharon Wells-Finos, to move him to a different cell, but to no avail.  LaFountain filed a grievance against Harry, Barbier, and Wells-Finos, alleging that they housed him with Riley in retaliation for a

grievance he had filed against Harry and a lawsuit he had filed against Anthony Martin, another Muskegon correctional officer.

Riley eventually threatened LaFountain's life, after which LaFountain refused to remain in his cell with Riley. Barbier ordered another officer to cite LaFountain for being "out of place" and disobeying a direct order. Barbier and Wells-Finos also placed LaFountain in a temporary segregation cell, where he remained for eight days. During that time, per orders from Harry, Barbier, and Wells-Finos, each new shift of officers issued LaFountain a direct order to continue celling with Riley. Every time that Riley refused, the officers cited LaFountain for major misconduct. LaFountain was ultimately charged with 12 major-misconduct violations and found guilty of eight of them. As a sanction, Harry and defendant Carmen Palmer, another Muskegon warden, ordered LaFountain to forfeit 770 days of his good-time credits.

LaFountain filed this lawsuit against Hawkins, Hofner, Cooley, Harry, Barbier, Wells-Finos, and Palmer, alleging that they each retaliated against him in violation of the First and Fourteenth Amendments. Before serving the complaint on the defendants, however, the district court dismissed it with prejudice for failure to state a claim. The court held that *Heck v. Humphrey*, 512 U.S. 477 (1994), barred the retaliation claim that was based on the misconduct charges. The court otherwise held that LaFountain's allegations did not support his claims. This appeal followed.

## II.

We review the district court's dismissal of LaFountain's claims de novo. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437 (6th Cir. 2012).

## A.

To state a claim for retaliation, a plaintiff must allege that "(1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] . . . ; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [his] protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Here, LaFountain's prior grievances and lawsuits

against prison officials were undisputedly protected conduct. The issue, then, is whether any of the defendants took an adverse action against LaFountain, and if so whether the defendant who took the action was motivated, at least in part, by LaFountain's protected conduct.

"[A]n adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake"—here, the filing of grievances or lawsuits against prison officials. *Id.* at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). Whether an act is sufficiently adverse varies based on context. The context here is a prison; and prisoners "may be required to tolerate more than average citizens[] before an action taken against them is considered adverse." *Id.* at 398. Even so, however, an act need not be egregious to be adverse. *Id.*

LaFountain argues that he pled three different adverse actions in his complaint. The first was the decision by Hawkins and Hofner to transfer LaFountain from Lakeland to Muskegon. As a general matter, a prison official's decision to transfer a prisoner from the general population of one prison to the general population of another is not considered adverse. *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). Absent unusual circumstances, prison officials, rather than judges, should decide where a particular prisoner should be housed. But this case is extraordinary, at least on the pleadings, because of the alleged settlement agreement. The complaint alleges that the transfer deprived LaFountain of the agreement's benefits because the transfer moved him farther away from his family and back into an environment in which he had already suffered retaliatory actions by prison officials. Whether LaFountain's transfer amounted to an adverse action for purposes of his retaliation claim, therefore, cannot be resolved at this stage. *See generally Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002).

The second adverse action is the damage to LaFountain's typewriter. The defendants do not dispute that the damage to the typewriter was an adverse action, but they argue that LaFountain did not allege that any of them caused it. LaFountain did allege, however, that Cooley ordered him to pack up his property, including his typewriter. He also alleged that "third-shift officers" took possession of the typewriter.

And the State concedes that Cooley supervised the third shift. Thus, LaFountain sufficiently alleged that Cooley damaged his typewriter.

The same cannot be said for Hofner and Hawkins—the other defendants that LaFountain accused of damaging his typewriter. LaFountain's only allegation against these defendants with regard to the typewriter is that they damaged it to retaliate against him. But LaFountain did not allege that Hofner or Hawkins had anything to do with the packing of his property or the taking of his typewriter. And LaFountain's conclusory allegation, standing alone, is insufficient to state a claim for retaliation against Hofner and Hawkins. *See Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

Finally, LaFountain contends that Harry acted adversely toward him by assigning him to a cell with Riley, a mentally ill prisoner. LaFountain relatedly says that Barbier and Wells-Finos retaliated against him by refusing his requests for a different cell. Cell assignments are a normal part of prison life, and thus typically do not amount to an adverse action. But LaFountain alleged extraordinary circumstances with respect to his cell assignment here. Among other things, LaFountain alleged that "Riley stated to [LaFountain] that he wouldn't fight but would go and get either of two knives he had hidden in the prison yard in order to use on [LaFountain]." Compl. at ¶ 17. This threat constitutes circumstances that "would deter[] a person of ordinary firmness," even a prisoner, "from exercising his or her right to access the courts." *Thaddeus-X*, 175 F.3d at 398.

Although defendants are not responsible for adverse actions that they do not cause, they are responsible for "those consequences that inextricably follow from [their] alleged retaliatory conduct[.]" *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005). Here, LaFountain alleged that he was forced to cell with Riley "as the means for causing a prisoner to prisoner alter-cation [sic] between mentally ill prisoner Riley and [LaFountain] *knowing in advance that [LaFountain] would either need to fight with or be assaulted by . . . Riley*[.]" Compl. at ¶ 29 (emphasis added). Thus, LaFountain sufficiently pled that Riley's threat was a foreseeable consequence both of Harry

assigning LaFountain to a cell with Riley, and of Barbier and Wells-Finos refusing LaFountain's requests for a different cell.

LaFountain also alleged that his placement with Riley was causally connected to his pending civil lawsuit against Muskegon correctional officers (*i.e.*, the protected activity).  Thus, LaFountain sufficiently pled a claim for retaliation against Harry, Barbier, and Wells-Finos for making LaFountain share a cell with Riley.

In sum, LaFountain sufficiently pled that Hawkins and Hofner acted adversely toward him when they disregarded the terms of the settlement agreement.  He likewise pled that Cooley acted adversely when Cooley caused or permitted LaFountain's typewriter to sustain $280 of damage.  He also sufficiently pled that Harry, Barbier, and Wells-Finos retaliated against him by forcing him to cell with Riley.  But we agree with the district court that LaFountain has not pled a retaliation claim against Hofner and Hawkins based on the typewriter damage.

B.

According to LaFountain, the district court erred in holding that *Heck v. Humphrey*, *supra*, barred his claim based on the misconduct charges.  In *Heck*, the Supreme Court held that a state prisoner cannot pursue a § 1983 claim for damages if the prisoner's success would "necessarily imply the invalidity of his conviction or sentence[.]" 512 U.S. at 487.  The Court later extended its holding to suits that challenge the procedures used in prison-disciplinary proceedings when the results of those proceedings impact the duration of a prisoner's sentence. *Edwards v. Balisok*, 520 U.S. 641, 646, 648 (1997).  The Court has since explained the rule as follows: "a state prisoner's § 1983 action is barred (absent prior invalidation [of his conviction])—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (emphasis in original).

In substance, LaFountain's claim based on his misconduct charges is a claim that the defendants entrapped him. But entrapment is generally a complete defense. *See Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 862 (7th Cir. 2004). Thus, if true, the prison should not have convicted LaFountain of the misconduct charges that resulted in the loss of his good-time credits. Moreover, LaFountain alleged that Barbier "purposefully falsified evidence in order to assure that [LaFountain] would be found guilty[.]" This allegation, too, implies the invalidity of the prison's misconduct findings and thus the deprivation of LaFountain's good-time credits. *Cf. Balisok*, 520 U.S. at 647–48. And the duration of LaFountain's confinement is directly affected by the loss of his good-time credits. *See* Mich. Comp. Law 800.33(2). Thus in this appeal, as in an earlier one, "LaFountain's challenges to his misconduct hearings and the resultant loss of 'good time' credits[] affect the length of his sentence and . . . are barred under *Edwards* and *Heck*." *LaFountain v. Coleman*, No. 10-1207, slip op. at 3 (6th Cir. Dec. 30, 2010).

LaFountain tries to circumvent *Heck* by citing *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007). There, the court allowed a prisoner to proceed with a retaliation claim based on a misconduct charge even though the prisoner was convicted of the misconduct. But *Thomas* involved disciplinary credits, not good-time credits. And "disciplinary credits . . . do not determine when a sentence . . . is completed[.]" *Id.* at 440 (quoting *Ryan v. Dep't of Corrs.*, 672 N.W.2d 535, 541 (Mich. App. Ct. 2003)). Here, in contrast, the prison deprived LaFountain of good-time credits, which do result in a reduction of a prisoner's sentence. *See* Mich. Comp. Law 800.33(2). *Thomas* is therefore inapposite.

## C.

LaFountain also argues that the district court erred by dismissing his equal-protection claim. To state that claim, LaFountain (who is white) needed to allege that the defendants treated a similarly situated non-white prisoner differently than they treated him. *See Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004). LaFountain alleged that prison officials did not charge a black prisoner, Scott Bradley, with

misconduct when he refused to cell with a particular prisoner. But LaFountain did not allege that the defendants actually knew about Bradley's misconduct or that they were involved in the decision whether to charge him. Nor did LaFountain allege that Bradley had refused to comply with a direct order. LaFountain therefore failed to state an equal-protection claim.

D.

LaFountain's final argument concerns the procedures used by the district court when it dismissed his complaint with prejudice and without leave to amend. In doing so, the court understandably followed this circuit's precedent in *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). LaFountain argues that we should overrule *McGore*.

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within 21 days after serving it" and, "[i]n all other cases, . . . [t]he court should freely give leave [to amend] when justice so requires." In *McGore*, however, we held that, when the Prison Litigation Reform Act requires dismissal of a prisoner's claim, a district court cannot grant leave to amend. 114 F.3d at 612.

Every other circuit to have reached the issue disagrees. *See Brown v. Rhode Island*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam); *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039–40 (7th Cir. 2012) (per curiam); *Hale v. King*, 642 F.3d 492, 503 (5th Cir. 2011) (per curiam); *Hughes v. Banks*, 290 F. App'x 960, 962 (8th Cir. 2008); *Nottingham v. Sherill*, 131 F. App'x 427, 427 (4th Cir. 2005) (per curiam); *Brown v. Johnson*, 387 F.3d 1344, 1348–49 (11th Cir. 2004) (collecting cases from the Second, Third, Ninth, Tenth, and D.C. Circuits). Meanwhile, in *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court held that "the PLRA's screening requirement does not—explicitly or implicitly—justify deviating from the usual procedural practice beyond the departures specified by the PLRA itself." 549 U.S. at 214. The Court reasoned that, "when Congress meant to depart from the usual procedural requirements, it did so expressly." *Id.* at 216.

*Jones* controls here.    The PLRA's screening requirements—28 U.S.C. §§ 1915A(b)(1) & 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1)—say nothing about whether a district court can allow a prisoner to amend his complaint.  Thus, *McGore* is flatly inconsistent with *Jones*.  We therefore overrule *McGore*; and we hold, like every other circuit to have reached the issue, that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA.

*        *        *

We reverse the district court's dismissal of the retaliation claims against Hofner and Hawkins for the transfer to Muskegon, against Cooley for the typewriter damage, and against Harry, Barbier, and Wells-Finos for the cell assignment with Riley.  We agree with the district court's reasoning as to the dismissal of the equal-protection claim as well as the retaliation claims against Hofner and Hawkins for the typewriter damage and against Harry, Barbier, Wells-Finos, and Palmer for the misconduct charges; but we vacate the court's dismissal of those claims solely so that the court can determine, in its discretion, whether to allow LaFountain to amend his complaint with respect to any of those claims.  The case is otherwise remanded for further proceedings consistent with this opinion.