NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0251n.06
No. 11-3627
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 02, 2014
DEBORAH S. HUNT, Clerk

KEITH E. GUNTHER,

    Plaintiff-Appellant,

v.

ED CASTINETA, et al.,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM
THE UNITED STATES
DISTRICT COURT
FOR THE SOUTHERN
DISTRICT OF OHIO

Before: BOGGS, CLAY, and GILMAN, Circuit Judges.

BOGGS, Circuit Judge. Plaintiff-Appellant Keith Gunther, an inmate at the Marion Correctional Institution, brought this prisoner civil-rights action under 42 U.S.C. § 1983, alleging numerous rights violations on the part of fourteen defendants, including six corrections officers and eight medical professionals (collectively, "defendants"). The district court adopted the report and recommendation of the magistrate judge in this matter and dismissed Gunther's complaint for failure to state a claim. Gunther appeals the dismissal and argues that he adequately pleaded three claims: two claims of deliberate indifference to his medical needs on the part of "[t]he medical staff, particularly Dr. Ojubwii," and one claim of the use of excessive force by "correction[s] officer Lucal," all in violation of Gunther's Eighth Amendment rights. Pl.'s Br. at 3–4. For the reasons that follow, we affirm the district court's dismissal with respect

to Gunther's deliberate-indifference claims but reverse and remand with respect to Gunther's excessive-force claim.

## I

We review de novo a district court's decision to dismiss an inmate's complaint, under 28 U.S.C. § 1915A, for failure to state a claim. *Grinter v. Knight*, 532 F.3d 567, 571 (6th Cir. 2008). The Prison Litigation Reform Act ("PLRA") requires district courts to screen and dismiss, inter alia, complaints that fail to state a claim upon which relief may be granted. *Id*. at 572 (citing 28 U.S.C. § 1915A(b)). "In reviewing a dismissal of a complaint for failure to state a claim, we must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true." *Bennett v. McBride*, 67 F. App'x 850, 853 (6th Cir. 2003) (citations omitted).

Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citations and internal quotation marks omitted). Nevertheless, we apply the "plausibility" standard set out in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), in screening inmate complaints under 28 U.S.C. § 1915A. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Under that standard, a plaintiff's allegations must be sufficient to enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## II

As a preliminary matter, we address the defendants' argument that, in construing Gunther's allegations for purposes of reviewing the district court's order, we should consider only the allegations contained in his initial complaint; that is, we should not consider any

allegations contained in Gunther's objections to the magistrate judge's report. Defs.' Br. at 11. The defendants argue that such objections are effectively an amendment to the complaint, and that such an amendment is barred by binding precedent in this circuit, including *Baxter v. Rose*, 305 F.3d 486, 489 (6th Cir. 2002) and *McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997).

To the extent that the cases that the defendants cite support their argument, those cases have been overruled. In *LaFountain*, we held that "a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA." *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). In so doing, we explicitly overruled our contrary holding in *McGore*, on the ground that the Supreme Court had made clear that "the PLRA's screening requirement does not—explicitly or implicitly—justify deviating from the usual procedural practice beyond the departures specified by the PLRA itself." *LaFountain*, 716 F.3d at 951 (citing *Jones v. Bock*, 549 U.S. 199, 214 (2007)). Accordingly, the district court did not abuse its discretion in considering the allegations made in Gunther's objections as well as those in his complaint, and we accord them due consideration in reviewing Gunther's appeal.

### III

We turn to Gunther's two deliberate-indifference claims. Gunther claims that "prison officials," including a Dr. Ojubwii and his staff, were "deliberately indifferent" to Gunther's back pain (claim one) and mental illness (claim two), in violation of the Eighth Amendment. To prove a violation of the Eighth Amendment based on deliberate indifference, a plaintiff must prove both that, objectively, he had "a serious medical need," and that, subjectively, the defendant or defendants had "a sufficiently culpable state of mind" with respect to his condition. *Johnson v. Karnes,* 398 F.3d 868, 874 (6th Cir. 2005).

Gunther must first prove that he had a "serious medical need." "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations and internal quotation marks omitted). Whether a medical need is "obvious" does not depend on whether it was *in fact* obvious to anyone *at the time*; that issue goes to the subjective, rather than the objective, component of deliberate indifference. Rather, the question is whether the average person would easily recognize—whether from observing the person or being told of his symptoms—that the plaintiff's condition needed treatment.

The case law is unclear as to what must be "obvious" about a medical need for it to be considered serious. Some cases have implied that a medical need is obvious to a layperson only if the layperson could easily *detect* it. These cases, however, typically do not distinguish the objective and subjective components of a deliberate-indifference claim, effectively combining them into one inquiry. *See, e.g., Alexander v. Jones*, 234 F.3d 1267 (6th Cir. 2000) (holding that "[plaintiff] Alexander's [glaucoma] condition was not so obvious that a lay person would recognize it"); *Gaudreault v. Mun. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (holding that "[plaintiff Gaudreault] did not display any needs so patent as to make lay persons such as [the officers involved] remiss in failing to arrange for immediate medical attention"). Other cases have implied that a need is obvious if the average person would surely *deem* it to be one that required treatment, regardless of whether such a person could easily detect it. For example, in *Karnes*, this court found that the plaintiff's need was sufficiently obvious because "[h]is medical request forms stated that his tendons were completely severed—a condition that almost any lay person would realize to be serious." *Karnes*, 398 F.3d at 874. We found that a serious

medical need was present because a severed tendon, though not necessarily obvious to the naked eye, is generally considered a serious condition.

We think the latter view is the better approach to determining whether a medical need is objectively serious: a medical need is serious if the average person would surely deem it to be one that required professional treatment. This view makes sense because the alternative—obviousness in the sense of visibility—speaks more directly to subjective awareness than to objective seriousness. It also makes sense because a condition that appears serious to a layperson observing it may in fact be harmless, and a condition that appears harmless may in fact be serious. Therefore, we will gauge seriousness based on how the layperson would likely react to the relevant facts, not on his ability to discover those facts.

If a plaintiff can demonstrate a serious medical need, he must then prove that the defendants had a "sufficiently culpable state of mind" with respect to that need. A sufficiently culpable state of mind exists where "the official in question subjectively perceived a risk of harm and then disregarded it." *Karnes*, 398 F.3d at 875 (citations and internal quotation marks omitted). In particular, "a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Id*. Accordingly, "when a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.* (citations and internal alteration marks omitted). To exhibit deliberate indifference, "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Harrison*, 539 F.3d at 518. "We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002).

5

**A**

Gunther first argues on appeal that he adequately pleaded a claim of deliberate indifference with respect to his back pain. The first question is whether Gunther's back pain constituted "a serious medical need." Gunther can arguably show that his back pain was a medical need that was "diagnosed by a physician as mandating treatment," since he appears to have required spinal surgery in 2003 and the doctors who eventually evaluated him again in 2008 allegedly said that he had "swelling around [his] lubar [*sic*] #4 and #5" and prescribed him additional pain medication—including "ultrium, neurontin, and flexeril"—to address it. Since Gunther's allegations indicate that his back pain was "diagnosed by a physician as mandating treatment," we find that he adequately alleged a "serious medical need."

We arrive at the same conclusion on the ground that Gunther's need for treatment was obvious. Gunther alleged that "[he] was in so much pain that [he couldn't] even put pressure on [his] legs." This condition qualifies as a "serious medical need" if it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Again, by "obvious," we mean that a layperson would readily agree that Gunther's condition required treatment. Here, we find that Gunther's alleged condition qualifies as a serious medical need: pain that prevents a person from putting pressure on his legs would be "easily recognized as needing a doctor's attention."

Thus, whether because Gunther's back pain was diagnosed by a physician as requiring treatment or because a layperson would surely agree that treatment was required, Gunther's back pain qualifies as an objectively serious medical need.

To survive dismissal, however, Gunther must also satisfy the subjective component of a deliberate-indifference claim—i.e. he must plausibly allege that prison officials knew about his

back pain and were deliberately indifferent to it. Although Gunther claims on appeal that he alleged that "[p]rison officials" and "the staff" were deliberately indifferent to his back pain, his complaint and his objections to the magistrate judge's report appear to lodge these allegations only against Dr. Ojubwii ("I told Dr. Ojubwii"; "Dr. Ojubwii fail [*sic*] to evaluate my illness"; "Doc made no efforts"; "Dr. Ojubwii fail [*sic*] to provide me medical attention"; and "the doctor fail [*sic*] to provide the reasonable duty of care"). We construe Gunther's allegations accordingly.

Gunther alleged that on February 8, 2008, he visited Dr. Ojubwii for his intake visit, and told him "all of my medical issues, that one was that I had had a spinal problem in my lower back down my left leg. The pain is so server [*sic*] at times to where I'm in so much pain that I can't even put pressure on my legs." Gunther continued: "Dr. Ojubwii fail [*sic*] to evaluate my illness. Doc made no efforts to even attempted [*sic*] to find out my problems to only first to perscrib [*sic*] me 600 mg. It didn't help to later give me 800 mg of IBProfin [*sic*] both. That neither done any good with my pain." Gunther alleged that "Dr. Ojubwii should have seen [the substantial risk of serious harm] when I kept coming to see him showing him my pain, but somehow he over looked [*sic*] these facts."

The question is whether Gunther plausibly alleged that Dr. Ojubwii committed "more than negligence or the misdiagnosis of an ailment," or, said differently, whether Dr. Ojubwii "drew the inference" that a substantial risk of harm to Gunther existed and then disregarded it.

Based on the facts alleged, Gunther's claim does not rise above the level of negligence or misdiagnosis, if it even reaches that level. Dr. Ojubwii cannot reasonably be said to have recognized and disregarded a substantial risk of harm to Gunther. Dr. Ojubwii prescribed 600 mg of ibuprofen initially and later increased that prescription to 800 mg in response to

Gunther's complaints. On receiving Gunther's medical history forms, Dr. Ojubwii ordered an MRI and referred Gunther to a specialist. Gunther does not allege, for example, that Dr. Ojubwii refused to treat him, or that after treating him, Dr. Ojubwii saw that Gunther was nonetheless unable to walk but did nothing. Nor can Gunther maintain that Dr. Ojubwii's prescriptions effectively constituted no treatment at all or a deliberate refusal to treat him. Gunther directs us to no case, and we are not aware of any, finding deliberate indifference on a comparable set of facts. We conclude that Gunther's allegations, even if true, do not indicate "deliberate indifference" to his medical needs on the part of Dr. Ojubwii. We therefore affirm the district court's dismissal of Gunther's first deliberate-indifference claim.

**B**

Gunther also claims that Dr. Ojubwii and "medical staff" were deliberately indifferent to his mental illness. Pl.'s Br. at 3.

Gunther must first show that his mental illness constituted a "serious medical need." Gunther alleged that he was diagnosed with paranoia and schizophrenia and prescribed medication to treat those illnesses. Assuming his allegations are true, Gunther's mental illness qualifies as a "serious medical need"—it was "diagnosed by a physician" as, presumably, "mandating treatment," and was treated accordingly at the Richland Correctional Institution, the previous facility in which Gunther was incarcerated. Furthermore, the average person would likely consider such mental illness to be one obviously requiring treatment. On both grounds, then, Gunther's alleged medical illness, if proven, would qualify as a serious medical need.

Gunther must also plausibly allege that the prison staff had a sufficiently culpable state of mind with respect to his mental illness. Gunther's allegations in connection with this deliberate-indifference claim, both below and on appeal, identify only Dr. Ojubwii as having been aware of his mental illness. Gunther alleged: "I also told Dr. Ojubwii of the facts [*sic*] that I suffer from

mental health issues. I had been diagnosed as suffering from paranoia and schizophrenia . . . ." Gunther further alleged that "Dr. Ojubwii fail [*sic*] to take the reasonable approach to come up with the proper diagnosis," and that "the mental health problems has [*sic*] never be [*sic*] address [*sic*]." Thus, Gunther's allegations, construed liberally in his favor, were that he told Dr. Ojubwii that he had been diagnosed with paranoia and schizophrenia and that he had been prescribed medication, and that Dr. Ojubwii thereafter did nothing to diagnose or treat him. Notably, Gunther does not allege that he repeatedly sought out treatment for his mental illness. He does not allege that he told Dr. Ojubwii that he was experiencing symptoms of or was otherwise suffering as a result of his mental illness. He does not allege that he sent the prison any medical files that pertained to his mental illness, as he did for his back pain. Nor does Gunther allege that Dr. Ojubwii or other officials either witnessed or were made aware of any episodes Gunther may have had in connection with his mental illness.

The question is whether Dr. Ojubwii a) inferred "a substantial risk of harm" from what Gunther told him and b) disregarded that risk. The foregoing allegations do not indicate deliberate indifference on the part of Dr. Ojubwii. Even if Dr. Ojubwii was negligent in failing to investigate what appears to have been Gunther's one-time revelation that he had a mental illness, more is needed for Gunther to plausibly allege that Dr. Ojubwii knew that Gunther faced a substantial risk of harm and acted with deliberate indifference to that risk. Again, Gunther does not point us to any authority, and we are not aware of any, holding that behavior similar to that of Dr. Ojubwii's alleged behavior here qualifies as deliberate indifference. We therefore affirm the district court's dismissal with respect to Gunther's second deliberate-indifference claim.

**IV**

Finally, Gunther argues on appeal that he adequately pleaded a claim of excessive force on the part of "Officer Lucal," one of the corrections officers in the prison. Gunther had broken his arm several months prior to the alleged incident, and his arm was in a brace. Gunther described the incident in his complaint and again, in similar terms, in his objections to the magistrate judge's report. As described in Gunther's objections, he alleged the following:

> I was last to go into the shake down room and when I did, Officer Lucal put his finger in my face right from the start with me standing there with no clothes on. I asked Lucal to see the Cap. after these acts. I had my pants in my hand as Lucal got upset for me asking to see the Captain as this Lucal grabbed my arm with the brace on it. Him knowing how I broke my arm, me going back, [and] forwards to CMC. Officer Lucal grabbed my broken arm trying to force my arm behind my back just because I asked Lucal to see the Captain. Lucal put his finger in my face to tell me that I'm to do as I'm told with me not knowing what he said this for because I done what I was told. Lucal is guilty of cruel and unusual punishment.

Essentially, Gunther alleged that Officer Lucal tried to force his broken arm behind his back without justification. In his complaint, Gunther alleged that he suffered severe physical pain as a result and was exposed to a risk of greater damage to his arm.

As with a claim of deliberate indifference, a claim of excessive force has both an objective and a subjective component. "The official must have acted with a sufficiently culpable state of mind, and the alleged wrongdoing must be objectively harmful enough to establish a constitutional violation." *Leonard v. Hoover*, 76 F. App'x 55, 57 (6th Cir. 2003). "In an excessive use of force claim, the subjective component requires the plaintiff to show that the defendants acted maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline." *Id*. (citations and internal quotation marks omitted). "[T]he extent of injury suffered by an inmate is one factor" to consider in determining

whether the Eighth Amendment was violated, but "serious injury" is not a prerequisite for a viable claim. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

At the pleading stage, we assume the truth of Gunther's allegations and draw all inferences in his favor. We hold that, despite the absence of any allegation of a serious or enduring injury, twisting a man's broken arm behind his back and thereby causing him severe pain and the risk of further injury is sufficiently harmful to satisfy the objective component of the Eighth Amendment inquiry. Gunther also alleged that Officer Lucal knew that Gunther's arm was broken—indeed it was allegedly in a brace at the time—and, critically, that Gunther was fully compliant with Officer Lucal's orders. Although Gunther is obviously not entitled to see an officer's supervisor on demand, under the circumstances as alleged, a jury could plausibly conclude that Officer Lucal's alleged response was excessive—that in forcing Gunther's broken arm behind his back, Officer Lucal acted "for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline."

Although the district court noted Gunther's allegations concerning the incident with Officer Lucal, it did not expressly address the incident in its analysis. We reverse the district court's dismissal with respect to Gunther's excessive-force claim.

## V

In view of the foregoing, the district court's opinion and order dismissing the complaint are AFFIRMED with respect to all defendants except Officer Lucal, the dismissal with respect to Gunther's deliberate-indifference claim against Officer Lucal is REVERSED, and the case is REMANDED to the district court for further proceedings.

**CLAY, Circuit Judge, concurring in part and dissenting in part.** The only question at this early stage of the litigation is whether Gunther has alleged sufficient facts that, accepted as true, state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Gunther has done so in this case, not only with respect to his excessive force claim but also with respect to his deliberate indifference claims. While I agree with the majority's conclusion that Gunther has stated a plausible claim of excessive force against Officer Lucal, and that dismissal of that claim was improper, I disagree with the majority's handling of Gunther's claims of deliberate indifference to his medical needs. Because I believe that Gunther has alleged facts that, accepted as true, could constitute deliberate indifference on the part of Dr. Ojubwii and the medical staff at Lorain Correctional Institution ("Lorain") in violation of Gunther's Eighth Amendment rights, I respectfully dissent as to that part of the majority opinion.

In his handwritten, *pro se* pleadings, Gunther alleges that prison officials and medical staff at Lorain were deliberately indifferent to his medical needs in two distinct ways: first, by ignoring his pleas for pain medication and refusing to adequately treat his spinal injury for over six months, allowing him to languish in extreme pain until he procured medical records from his private physician; and second, by refusing to prescribe medication or other treatment for his diagnosed mental illness.

As an initial matter, I disagree with the majority's assertion that Gunther's complaint and objections to the magistrate judge's report "appear to lodge these allegations only against Dr. Ojubwii." *Majority* at 7. Construing Gunther's *pro se* pleadings liberally, as we must, Gunther has alleged that the medical staff at Lorain—not solely Dr. Ojubwii—was aware of his spinal injury, and failed to take any action. Gunther clearly states in his complaint that

12

shortly after arriving at Lorain, he "made staff aware" of his "spinal problems," his back pain, and the fact that he had undergone spinal surgery. *See* Complaint at 5. It is not necessary that the complaint precisely name each individual; it is clear that Gunther is referring to the Lorain medical staff. That Gunther's allegations were made against the entire medical staff at Lorain, and not only Dr. Ojubwii, is further evident where Gunther states that his neurologist from home had to send medical records "before *Lorain* would schedule [Gunther] to go" get an MRI. *See* Complaint at 5 (emphasis added).

Accepting Gunther's statement of the facts as true and drawing all inferences in his favor, as we must at the dismissal stage, Gunther has adequately pleaded both the objective and subjective components of a deliberate indifference claim with respect to his spinal injury. As the majority recognizes, Gunther's assertion that his back pain was so severe that at times he was unable to walk constitutes a serious medical need "that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Majority* at 6; *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Precisely this same fact compels the finding that Gunther can also establish the subjective component of deliberate indifference because it means that Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). *See Hope v. Pelzer*, 536 U.S. 730, 738 (2002) ("We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious."). Given the obviousness of Gunther's alleged medical need, including his readily-apparent alleged inability to walk, it can be inferred that the Lorain medical staff was aware of the seriousness of Gunther's medical need and deliberately disregarded it. *See Hope*, 536 U.S. at 738.

Even without drawing this inference, Gunther has sufficiently alleged that he directly told Dr. Ojubwii that his back pain was so intense that at times he could not even put pressure on his legs, *see* Objections to R&R at 2, and that Dr. Ojubwii prescribed only ibuprofen—a treatment which is "so woefully inadequate as to amount to no treatment at all." *See Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). As to the medical staff generally, Gunther alleged in his complaint that he "made staff aware of [his] spinal problems, that [he] had spinal surgery[, and] that [he had] pain in" his lower back and left leg that rendered him unable to walk. *See* Complaint at 5. Reading the pleadings liberally, these allegations adequately establish the subjective component of the deliberate indifference test against both Dr. Ojubwii and the Lorain medical staff. Gunther has sufficiently alleged that the Lorain medical staff knew "that [Gunther] face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Ultimately, Defendants may introduce prison records that tend to disprove Gunther's allegation that he was unable to walk or that his medical need was as obvious as he contends. However, speculation about such evidence is irrelevant at this stage of the litigation. For now, Gunther has stated a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Gunther has also sufficiently alleged that Dr. Ojubwii was deliberately indifferent to his diagnosed history of mental illness, including paranoid schizophrenia. Gunther specifically alleges that he told Dr. Ojubwii that he suffers from and has been diagnosed with paranoid schizophrenia, and according to the pleadings, no course of treatment was undertaken. Objections to R&R at 6. Gunther's allegation that Dr. Ojubwii failed to properly treat Gunther's mental illness after being made aware of it is sufficient to satisfy the subjective component of a deliberate indifference claim, and to survive dismissal.

Although Gunther's allegations are not extensive, they are sufficient to state a claim that the medical staff at Lorain was deliberately indifferent to Gunther's serious medical needs in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. Accepting his statement of the facts as true, which the Court must do at the dismissal stage, Gunther has adequately pleaded both the objective and subjective components of an Eighth Amendment deliberate indifference claim. Gunther's back pain was sufficiently obvious because it was so debilitating that, at times, he was unable to walk. Given the obviousness of Gunther's condition and the fact that he repeatedly informed the Lorain medical staff of the problem, Gunther has alleged that the medical staff knew of and intentionally disregarded a serious medical condition. Gunther has similarly alleged that at least Dr. Ojubwii knew of his diagnosed mental illness and failed to treat it. Although Defendants may subsequently introduce evidence to refute Gunther's assertions, the only question at this stage of the litigation is whether Gunther has alleged sufficient factual matter that, accepted as true, states a claim for relief. Because he has done so, the district court's decision should be reversed.