NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 17-2146

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DANIELLE S. SCOTT,

    Plaintiff-Appellant,

v.

DARYL BECHER, et al.,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jun 05, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF
MICHIGAN

---

Before: GUY, DAUGHTREY, and SUTTON, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Danielle S. Scott, a Michigan prisoner proceeding *pro se*, appeals the district court's judgment in favor of the defendants in his civil-rights action filed under 42 U.S.C. § 1983. Scott has also filed a motion for the appointment of counsel. This case has been referred to a panel of the court that, upon examination, unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a).

Scott filed a complaint claiming that Correctional Transportation Officer Daryl Becher's reckless driving that caused injury to him was a constitutional violation under the Eighth Amendment; that Becher, Nurse S. Buskirk, and unknown doctors, nurses, and healthcare workers were deliberately indifferent to his serious medical needs following the injury; that he was retaliated against for filing a grievance; and that Special Activities Coordinator David M. Leach violated his First Amendment rights by denying him a religious-meal accommodation. The district court dismissed the complaint as to Daniel H. Heyns, Warden Kenneth McKee, Warden Carmen D. Palmer, and Nurse S. Laughhunn for failure to state a claim upon which relief could be granted and severed Scott's claim against Leach. The district court then granted the remaining defendants' motion to dismiss on the basis of qualified immunity.

On appeal, Scott argues that the district court erred in dismissing his deliberate-indifference claim for injury against Becher; his medical deliberate-indifference claims against Becher and Buskirk; and his retaliation claim against Buskirk.

We review *de novo* a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008). We may consider exhibits attached to the complaint, without turning the motion to dismiss into a motion for summary judgment, as long as they are "referred to in the complaint and are central to the claims contained therein." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)).

We will not dismiss a case for failure to state a claim unless the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accepting as true all factual allegations, we must "determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995) (quotation marks and citation omitted). "It is not the function of the court to weigh the evidence or evaluate the credibility of witnesses"; whether we believe the factual allegations is irrelevant. *Id.* And when we apply this standard to *pro se* litigants, we must construe the complaint liberally. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

In determining whether a government official is entitled to qualified immunity, we consider "whether 'a constitutional right would have been violated on the facts alleged' and, if so, whether the right was 'clearly established.'" *Occupy Nashville v. Haslam*, 769 F.3d 434, 442 (6th Cir. 2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). Plaintiffs can prove that point by citing to "cases of controlling authority in their jurisdiction at the time of the incident" or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999); *Kent v. Oakland County*, 810 F.3d 384, 395 (6th Cir. 2016). The right cannot be defined at a high level of generality, but a right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official

would understand that what he is doing violates that right.'" *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Put another way, the inquiry into whether a right is clearly established asks whether a reasonable government officer would have "fair warning" that the challenged conduct was illegal. *Baynes*, 799 F.3d at 612–13 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

The standard is "fair warning" because the purpose of qualified immunity is not to protect malicious behavior that violates constitutional rights in a manner the precise likes of which have not yet been the basis of a lawsuit in this circuit. Instead, qualified immunity has a two-fold purpose: to ensure that government agents are not deterred from vigorous pursuit of their duties due to fear that an honest misstep will expose them to money damages and, at the same time, to provide citizens a remedy for constitutional injuries. *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). After all, qualified immunity "acts to safeguard government, and thereby to protect the public at large, not to benefit its agents." *Wyatt v. Cole*, 504 U.S. 158, 168 (1992). To conclude otherwise in the Eighth Amendment context would "encourage bad actors to invent creative and novel means of using unjustified force on prisoners." *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 103 (4th Cir. 2017).

Taking the allegations in Scott's complaint as true, we conclude that Becher was not entitled to qualified immunity at this stage of Scott's Eighth Amendment claim of deliberate indifference through reckless driving. According to the complaint and the attachments, Scott was one of a number of prisoners being transferred from Saginaw Correctional Facility to Bellamy Creek Correctional Facility. Becher was driving above the speed limit, swerving, and generally driving recklessly. When Scott and other inmates "beg[ged] him to slow down, before [they] all die[d]," Becher refused, laughed, and instead accelerated. At some point, the speeding bus hit a bump, sending the front tires of the bus airborne. The inmates went airborne, too. One would assume that all the prisoners were handcuffed at the time, but apparently none were seat-belted. As a result, Scott was catapulted out of his seat, and was then slammed down onto his head, neck, and back. When the bus tires landed, the front tire of the bus went off the road, and in an apparent overcorrection, Becher swerved the bus into the lane of oncoming traffic before regaining control.

Scott has alleged actions by Becher that no reasonable corrections official could believe were legal. Caselaw supports that conclusion. Scott points to factually similar cases out of the Eighth and the Fifth Circuits that analyzed under the Eighth Amendment allegations of reckless driving while transporting an inmate without a seatbelt. In *Brown v. Fortner*, 518 F.3d 552, 561 (8th Cir. 2008), the Eighth Circuit held that a reckless prison driver violated the (un-seat-belted) plaintiff's clearly established Eighth Amendment rights. The court concluded that the driver had "fair warning" that his actions were illegal, even though the only caselaw on point was a two-paragraph, 14-year-old unpublished decision. *Id.* Relying on *Fortner*, the Fifth Circuit reversed a dismissal under the Prison Litigation Reform Act of an Eighth Amendment claim brought by a prisoner who alleged that he was injured when the prison van driver drove recklessly, sped, and swerved, resulting in a sudden stop that threw the plaintiff from his seat. *Rogers v. Boatright*, 709 F.3d 403, 408–09 (5th Cir. 2013).

Although a number of circuits have not addressed the specific reckless use of a vehicle to harm an inmate, "there is a clear consensus among the circuits" that "the Eighth Amendment protect[s] against the malicious and sadistic infliction of pain and suffering . . . in a diverse range of factual scenarios." *Thompson*, 878 F.3d at 103, 105. And to use a vehicle maliciously to harm an inmate falls squarely into that category—especially when there is no risk posed by the inmate and no legitimate penal interest. *See id.* A "rough ride" is "a peculiarly cruel means of punishment, as [it] is designed to place the victim in fear for his life. Not only is the prisoner not able to protect himself, but motor vehicles, unlike a controlled spray or direct applications of force, are not designed for use as a means of securing compliance or otherwise subduing a prisoner." *Id.* at 103.

What is more, cases that find no violation of the Eighth Amendment help Scott, too. Post-*Fortner* cases have found no Eighth Amendment violations for simply failing to seatbelt inmates. *See Jabbar v. Fischer*, 683 F.3d 54, 58–59 (2nd Cir. 2012). But those cases buttress *Fortner*'s

conclusion by explaining that a failure to secure an inmate with a seatbelt alone is not an Eighth Amendment violation, in part because it does not rise to the level of what the driver did in *Fortner*. *See id.* at 58; *Fluker v. Cty. of Kankakee*, 945 F. Supp. 2d 972, 989 (C.D. Ill.) (calling *Fortner*'s conclusion an "unexceptional proposition"), *aff'd*, 741 F.3d 787 (7th Cir. 2013); *see also Fouch v. District of Columbia*, 10 F. Supp. 3d 45, 51 (D.D.C. 2014); *Titus v. Unger*, No. 8:12-CV-261, 2013 WL 5937328, at *12 (D. Neb. Nov. 4, 2013). In other words, failure-to-seatbelt cases "involved mere negligence," but "all cases that have squarely dealt with intentional misconduct"—which Scott has alleged here—"have found an Eighth Amendment violation." *Thompson*, 878 F.3d at 105–06.

In light of the obviousness of the constitutional violation, Becher could not reasonably have believed that driving recklessly while Scott and the other prisoners were not wearing seatbelts was lawful. Accordingly, the district court erred in granting Becher qualified immunity on Scott's Eighth Amendment claim of deliberate-indifference by reckless driving.

Scott also argues that Becher was deliberately indifferent to his medical needs. Scott is correct that a prison guard is deliberately indifferent "in intentionally denying or delaying access to medical care . . . for a serious medical need." *See Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 1996). But he cannot satisfy that standard here. Scott alleges that after the bus went airborne and he slammed down, he was in tremendous pain. He demanded to be taken to a hospital. Instead of taking the prison bus to the hospital, the bus traveled the remaining short distance to the prison before Scott was able to go to the infirmary to get medical attention. As discussed below, Scott alleges that he did not receive sufficient care when he arrived in the infirmary; but that is another matter. We cannot say that any reasonable officer would have known that the constitution required Becher to drive the prison bus immediately to a hospital. *See Blackmore*, 390 F.3d at

897. Becher is entitled to qualified immunity on the claim of deliberate indifference to medical needs.

On the other hand, Scott has stated a plausible claim of deliberate indifference against Nurse Buskirk because he arguably can show that a reasonable nurse would recognize that Scott needed medical treatment. *See Gunther v. Castineta*, 561 F. App'x 497, 501 (6th Cir. 2014) (holding that prisoner plausibly alleged that his back pain qualified as a serious medical issue). When first seen in the infirmary, Scott explained that he was in "extreme pain" and that something was seriously wrong. He asked for an x-ray or an MRI, but the infirmary staff told him—without performing an x-ray—that he did not "appear" to have any broken bones and gave him ibuprofen, an over-the-counter pain reliever. Yet almost a month after the accident, Scott reported that the pain was getting worse, that he continued to have headaches, and that when he walked it felt like electricity shooting up his legs, back, and left arm. He returned to the nurse's office and complained about continuing pain and requested more medication, which he did not receive. If his injuries were as bad as he alleges—which, at this point in the case, we must assume that they were—then no reasonable nurse would have ignored his repeated requests for help. He has adequately alleged that Buskirk was deliberately indifferent to his need for treatment. She is not entitled to qualified immunity on this claim.

Finally, the district court erred in failing to address Scott's retaliation claim. Scott has alleged that Buskirk stated that, if he signed off on the resolution of a grievance, she would talk to the doctor about prescribing him pain medication, that he refused to do so, and that he was told by another healthcare professional that he would not receive treatment unless he resolved the grievance. To succeed on a retaliation claim, a plaintiff must show that: (1) he engaged in protected conduct; (2) the defendant took adverse action against him; and (3) the adverse action was motivated by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)

(*en banc*).  Because Scott has alleged that Buskirk took an adverse action against him motivated by his failure to resolve his grievance, the district court erred in not addressing this claim.

For these reasons, we **VACATE** the district court's dismissal of Scott's claims and **REMAND** the case to the district court.  We also **DENY** all other pending motions as moot.